United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-1616NE

In re Western Iowa Farms Co.,     *

              Debtor,                  *

----------------------     *

                                 *    On Appeal from the United

Western Iowa Farms Co.,     *    States District Court

                                 *    for the District of

            Appellant,         *    Nebraska.

                                 *

       v.                       *

                                 *

First Savings Bank, Manhattan, Kansas,     *

                                 *

           Appellee.         *

_____

Submitted: October 24, 1997
Filed: February 11, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

This case is about checks drawn on the account of Western Iowa Farms Co., a bankruptcy debtor, in a Montana bank. The person who signed the checks had

Western Iowa's authority, generally speaking, to do so, but the checks were made to payees who never knew anything about them. The signers of the checks forged the payees' endorsements and then had the checks deposited to the signers' own accounts in a Kansas bank. That bank, in turn, had the checks presented for payment to the drawee bank, which paid them and charged Western Iowa's account. In this action, Western Iowa seeks to recover the amount of the checks from the Kansas bank, on the theory that paying the checks on forged endorsements was a conversion. See Kan. Stat. Ann. § 84-3-419(1)(c) (1983).[1]

The Bankruptcy Court[2] held for the Kansas bank (First Savings Bank of Manhattan, Kansas) after a trial. The Court found as a fact that the Kansas bank had acted in a commercially reasonable manner in handling the checks. The District Court[3] affirmed, and so do we. We hold that the Bankruptcy Court's finding is not clearly erroneous, and that, accordingly, the bank has a defense to this conversion action under Kan. Stat. Ann. § 84-3-419(3).

I.

Western Iowa was a Nebraska corporation engaged in the livestock business. It provided various clearing services to livestock buyers, including Leonard and Mike Russell, who were independent livestock buyers. The Russells were authorized to write checks drawn on Western Iowa's bank account at Norwest Bank in Butte, Montana. As a matter of course, the Russells would purchase livestock, using a

---

[1]The parties agree that Kansas law, as it existed at the time when the checks were deposited, governs. The Kansas version of the Uniform Commercial Code was revised in 1992, but the law in effect before that time applies to this case.

[2]The Hon. Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[3]The Hon. Lyle E. Strom, United States District Judge for the District of Nebraska.

Western Iowa check, and resell the livestock to a third party. Once the Russells had been paid by the third party, they would then repay Western Iowa the amount of the original check plus a fee.

In late 1989 and early 1990, the Russells wrote ten checks totaling almost $275,000,[4] but the checks did not represent actual cattle purchases. The Russells wrote the checks to three different payees, none of whom was aware of the existence of the checks, and Brad Russell (Leonard's son and Mike's brother) forged the payees' endorsements and deposited the proceeds into the Russells' accounts at First Savings Bank of Manhattan, Kansas. On the reverse side of each check, Brad Russell forged the signature of the payee, and below that wrote a restrictive endorsement ("for deposit only") and one of two different account numbers representing accounts controlled by the Russells at First Savings.

First Savings accepted each of the ten checks for deposit into the Russells' accounts and presented each check for payment, through normal banking channels and the Federal Reserve Bank, to Western Iowa's bank in Montana. Western Iowa's bank paid the checks and charged the amount of the checks against Western Iowa's account.

Western Iowa sued First Savings. Western Iowa claimed that First Savings converted Western Iowa's property when the bank accepted the deposit of checks bearing forged endorsements and presented them to Western Iowa's bank for payment. Western Iowa relied on Kan. Stat. Ann. § 84-3-419(1)(c) (1983), which provides that "[a]n instrument is converted when it is paid on a forged endorsement." In defense, First Savings, among other things, asserted that it had acted with ordinary care and in a commercially reasonable manner. It cited Kan. Stat. Ann. § 84-3-419(3), which reads as follows:

---

[4] Leonard Russell wrote eight checks amounting to $228,484.65. Mike Russell wrote two checks amounting to $46,507.23

> Subject to the provisions of this Act concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

Kan. St. Ann. § 84-3-419(3).[5]

The Bankruptcy Court agreed with this argument and found as a fact that reasonable commercial standards had been followed. Accordingly, judgment was entered in favor of First Savings. As we have already noted, the District Court affirmed this judgment.

## II.

This case turns on the law of Kansas, and not even the current law of that state. It depends on an interpretation of the Kansas version of the Uniform Commercial Code as it existed before 1992. On this subject the final authority is the Supreme Court of Kansas, not this Court. In addition, the case is now before us on its second appeal as of right. Bankruptcy cases are almost unique in the federal system in this respect. In most cases, including the most important civil and criminal litigation, litigants have only one appeal as of right, from a district court to a court of appeals. In bankruptcy proceedings, however, Congress has provided for two appeals as of right. The case has already gone through one full appellate cycle, and both the Bankruptcy Court and the District Court have written full opinions.

_____

[5]By the time this action was brought, none of the proceeds of the checks remained in the hands of First Savings.

For these reasons, we content ourselves with a fairly summary discussion.  The back of the checks in question look like this:

Forged name of payee
For deposit only
Account numbers of Russells

First Savings did exactly what the endorsement told it to do.  It deposited the checks in the numbered accounts indicated underneath the words "for deposit only."  An endorsement "for deposit only" is a restrictive endorsement, in the sense that the checks must be handled in accordance with the endorsement.  That was done here.  The endorsement was not irregular on its face.  A payee has every right to endorse a check and specify that the proceeds be deposited in somebody else's account.  Indeed, in this particular case, the endorsement by the payees (we should say the apparent endorsement, because the endorsement was forged) was in blank.  The endorsement consisted simply of the name of the payee.  This sort of endorsement turns the check into bearer paper.  Anyone who comes into possession of it can assert ownership, and persons dealing with the instrument in good faith and without reasonable suspicion can deal with that person as the true owner.

Nor was there anything here to put the bank tellers who accepted the checks for deposit to the Russells' accounts on notice that anything was amiss or required investigation.  There is no evidence that the tellers were familiar with the payees or had reason to believe that the endorsements were forged.  On the contrary, the Russells had done a good deal of business with the bank, depositing large items over a substantial period of time, and there was no reason to suspect that they could not have made the checks good if the necessity had arisen.  (In the ordinary course, when the drawee bank discovered that the endorsements had been forged, it would report the fact to the depositary bank, here First Savings, and that bank, in turn, would have recouped the

amount out of the Russells' accounts. That was not possible here because those accounts had been depleted.)

Persons familiar with banking practices in Kansas testified on both sides of the issue. The Bankruptcy Court found the testimony favorable to First Savings Bank more persuasive. We have no conviction, firm or otherwise, that this finding was mistaken. Speed and ease of handling are important in the handling of checks. The law should not superimpose procedures that would unreasonably slow the payment, deposit, and handling of such items. Even small banks handle thousands of items a day. It simply is not practical to demand of bank tellers more than was done in the present case, or at least the Bankruptcy Court could properly have so found.

First Savings also argues that it has an absolute defense under Kan. Stat. Ann. § 83-3-405 (1983), which provides that "an endorsement by any person in the name of a named payee is effective if . . . (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." Under this language, if literally read, the forged endorsements in the instant case would be effective, and First Savings would have a defense regardless of whether it acted in a commercially reasonable fashion. We find it unnecessary to address this argument. First Savings did in fact act commercially reasonably, and that is all that needs to be said to affirm this judgment.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT